IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| JAMES QUARTERMAN, et al.,<br><br>　　　*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>AGRICULTURE, et al.,<br><br>　　　*Defendants*. | Case No. 3:25-cv-161-TES |

## ORDER DISMISSING PLAINTIFFS' COMPLAINT

On December 12, 2025, Defendants United States Department of Agriculture
("USDA"), Commodity Credit Corporation ("CCC"), and Brooke Rollins, in her official
capacity as USDA Secretary and CCC Chairman (collectively the "Government"), filed a
Motion to Dismiss [Doc. 32] Plaintiffs James Quarterman, Felecia Quarterman, and
Nicole Quarterman's Amended Complaint [Doc. 30] on multiple grounds.

## BACKGROUND

Pro se Plaintiff James Quarterman originally filed this action against Defendants
in the Court of Federal Claims on July 14, 2025. [Doc. 1]. On September 29, 2025,
however, the Court of Federal Claims transferred the case to the Middle District of
Georgia on the grounds that it lacked subject-matter jurisdiction. [Doc. 7]. Plaintiff
James Quarterman then sought leave to amend his Complaint to add his wife, Felecia

Quarterman, and his daughter, Nicole Quarterman, as additional plaintiffs in this suit on October 16, 2025. [Doc. 12]. Accordingly, this Court granted Mr. Quarterman's Motion for Leave [Doc. 12] and instructed Plaintiffs to "immediately file [the] Amended Complaint." [Doc. 13]. Plaintiffs, however, failed to do so.

A motions hearing was held on December 3, 2025. At this hearing, the Court directed Plaintiffs to file their Amended Complaint by December 5, 2025. [Doc. 29]. The Court gave Plaintiffs specific instructions to file the Amended Complaint they had attached as an exhibit to their Motion for Leave to Amend. [Doc. 12-1]. While Plaintiffs filed an Amended Complaint on December 5, 2025, Plaintiffs ignored the Court and filed an Amended Complaint [Doc. 30] that was, in fact, quite different from both the proposed (and approved) amendment [Doc. 12-1] and the original Complaint [Doc. 1] that had already been presented to the Court.

Nevertheless, the Government filed the current motion to dismiss Plaintiffs' Amended Complaint [Doc. 30], which the Court finds to be the operative pleading in the case. *See Hoefling v. City of Mia.*, 811 F.3d 1271, 1277 (11th Cir. 2016). Plaintiffs have argued that "officials from the USDA and CCC intentionally discriminated against them based on race and their roles as [b]lack [c]ounty [c]ommittee [m]embers when denying their farm loan application." [Doc. 30, p. 2]. Additionally, Plaintiffs allege that "[t]his denial was accompanied by procedural violations, including failure to notify [them] of an incomplete application and not issuing a loan number as required by

regulations." [*Id.*]. Plaintiffs further allege that "[a]s a direct result of this discriminatory denial, the plaintiffs lost the opportunity to fulfill a multi-million-dollar contract, suffered substantial financial losses, and [were] ultimately compelled to sell their farm." [*Id.*].

To bolster their allegations, Plaintiffs state that they "sought a USDA/CCC farm loan to support a lucrative contract with Spice World for organic garlic production" and that "[Plaintiff] Nicole Quarterman's eligibility was pre-approved by the Georgia FSA Farm Loan Program Chief based on her classified status, and the application was processed with direct involvement from USDA officials." [*Id.* at pp. 3–4]. Plaintiffs then allege that former FSA Farm Loan Manager Megan Stanley then denied the loan application and allegedly "made statements indicating intentional discrimination based on race and position as a [b]lack [c]ounty [c]ommittee [m]ember." [*Id.* at p. 4]. Plaintiffs argue that evidence of such misconduct includes "official emails, administrative findings, and direct admissions of bias." [*Id.*]. According to Plaintiffs, this denial "was based on arbitrary grounds, including 'unacceptable credit' and alleged disqualification due to military status, contrary to USDA regulations and pre-approval." [*Id.*]. As a result, Plaintiffs claim that they "lost the ability to fulfill a multi-million-dollar contract with Spice World, suffered significant financial losses, and were forced to sell their farm." [*Id.*].

In a Memorandum of Law in Support of Amended Complaint that was filed as

an attachment to Plaintiffs' Amended Complaint, Plaintiffs allege that they have claims arising under 42 U.S.C. § 1981, Section 601 of Title VI of the Civil Rights Act of 1964, the Fifth Amendment, and the Equal Credit Opportunity Act & Regulation B [Doc. 30-1, pp. 4–6]. Plaintiffs have included several cursory allegations in support of their claims, including the assertions that they have sufficiently alleged "intentional discrimination based on race and color, supported by direct and circumstantial evidence," "that the discriminatory denial of the farm loan constitutes a regulatory taking of their property interest in the Spice World contract, without just compensation," and that "discrimination in a credit transaction based on race and protested status" was in direct violation of "ECOA and Regulation B." [*Id.* at pp. 5–6].

On December 12, 2025, the Government filed its Motion to Dismiss Plaintiffs' Amended Complaint. [Doc. 30]. On December 29, 2025, Plaintiffs filed their response. [Doc. 31]. The Government requested an extension to reply under Local Rule 6.2 on January 5, 2026. [Doc. 34].  That request was granted the same day, ultimately giving the Government until January 26, 2026, to file a reply. Clerk's Granting of Extension, No. 3:25-cv-00161-TES (M.D. Ga. Jan. 5, 2026). Because the Court feels that the issues presented have been briefed in a manner that allows the Court to "clearly determine from the record before it the relative legal positions of the parties so as to obviate the need for the filing of opposition," the Court issues this Order without the need for consideration of the Government's forthcoming reply brief. *See* LR 7.7, MDGa.

## LEGAL STANDARDS

### A.    Federal Rule of Civil Procured 12(b)(6)

When ruling on a motion under Federal Rule of Civil Procedure 12(b)(6), district courts must accept the facts set forth in the complaint as true. *Twombly*, 550 U.S. at 572. A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). In fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted).

Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does require "more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted). To decide whether a complaint survives a motion to dismiss, district courts are instructed to use a two-step framework. *Id.* The first step is to identify the allegations that are "no more than mere conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion is subject to dismissal when it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (internal quotations omitted); *see also Twombly*, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual

enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

### B.    Federal Rule of Civil Procedure 12(b)(1)

The standard for proceeding under Rule 12(b)(1), however, is different. An action may proceed in this Court only if federal subject matter jurisdiction exists. *Lifestar Ambulance Serv., Inc. v. United States*, 365 F.3d 1293, 1295 (11th Cir. 2004)."When a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts, . . . no presumptive truthfulness attaches to a plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue." *Turcios v. Delicias Hispanas Corp.*, 275 F. App'x 879, 880 (11th Cir. 2008) (internal quotations omitted) (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

A Rule 12(b)(1) motion may be based upon either a facial or a factual challenge to the complaint. *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). If the defendant raises a facial attack, the district court may only look to see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, taking the facts alleged as true. *See id.* Factual attacks challenge the existence of subject matter jurisdiction in fact, and the district court may consider matters outside of the

pleadings. *Id.* In such an instance, the district court may dismiss based on the complaint, either alone, or supplemented by undisputed facts, its resolution of disputed facts, or both. *See id.*; *see also Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (holding that "the existence of [subject-matter] jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered" and "no presumptive truthfulness attaches to plaintiff's allegations") (internal quotations and citations omitted). "In the face of a factual challenge to [subject-matter] jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

## DISCUSSION

### A.    42 U.S.C. § 1981

Section 1981 prohibits discrimination on the basis of race in the making and enforcement of contracts. 42 U.S.C. 1981(a). Subsection (c) of Section 1981 unequivocally provides that "[t]he rights protected by this section are protected against impairment by *nongovernmental* discrimination and impairment under color of *state* law." 42 U.S.C. 1981(c) (emphasis added). In a nutshell, Section 1981 provides a cause of action for individuals subjected to discrimination by private actors and discrimination under color of state law, but not federal law. *See Lee v. Hughes*, 145 F.3d 1272, 1277 (11th Cir. 1998). In this case, Plaintiffs have asserted their Section 1981 claim against exclusively federal government entities and federal officials for actions allegedly taken under color of

federal law. There are no state actors or state laws at issue here. As such, Plaintiffs'

Section 1981 claim is easily dismissed.

### B.    Section 601 of Title VI

Next, Defendants argue that Plaintiffs' Title VI claim fails as a matter of law and

must be dismissed. As is the case with each of Plaintiffs' claims, the supporting facts

are, at best, scant. There is little to no factual support for Plaintiffs' claim which is

mentioned in passing in the Memorandum they filed in connection with their Amended

Complaint. [Doc. 30-1, p. 5]. Such drive-by claims rarely, if ever, prevail in federal court.

Even so, Section 601 of Title VI provides that "[n]o person in the United States shall, on

the ground of race, color, or national origin, be excluded from participation in, be

denied the benefits of, or be subjected to discrimination under any program or activity

receiving Federal financial assistance." 42 U.S.C. § 2000d. However, like § 1981,

Congress did not include federal agencies in the statutory definitions of "program

activity" and "program." *See* 42 U.S.C. § 2000d-4a. As such, "Title VI does not apply to

programs conducted directly by federal agencies." *Halim v. Donovan*, 951 F. Supp. 2d

201, 207 (D.D.C. 2013); *Walton v. Sec'y Veterans Admin.*, 187 F. Supp. 3d 1317, 1330-31

(N.D. Ala. 2016) (dismissing plaintiff's claims because Title VI did not apply to the VA

or the Secretary of the VA); *Payne v. United States*, No. 1:18-cv-2518-TWT, 2018 WL

11192916, at *5 (N.D. Ga. Dec. 13, 2018) (same); *Galley and Garden, LLC, v. Guzman*, No.

2:22-cv-1511-AMM, 2023 WL 12116934, at *3-4 (N.D. Ala. Nov. 16, 2023) (dismissing

Title VI claims against the SBA because federal agencies are not liable under Title VI). In fact, [e]ven before Congress expressly defined the terms 'program or activity' and 'program' in 1988, courts had long held that Title VI 'was meant to cover only the situations where federal funding is given to a non-federal entity which, in turn, provides financial assistance to the ultimate beneficiary.'" *Halim*, 952 F. Supp. 2d at 207 (quoting *Soberal–Perez v. Heckler*, 717 F.2d 36, 38 (2d Cir.1983), cert. denied, 466 U.S. 929 (1984)). In the instant case, Plaintiffs only assert their Title VI claims for the denial of their USDA farm loan application against federal Defendants specifically excluded from Title VI. As such, Plaintiffs' Title VI claims must be dismissed.

### C.    The Takings Clause Under the Fifth Amendment

Next, Defendants posit that Plaintiffs have failed to state a claim under the Fifth Amendment's Takings Clause. Defendants first argue that this Court lacks subject-matter jurisdiction over Plaintiffs' takings claim. To support that argument, Defendants point to 28 U.S.C. § 1491(a)(1), which provides that the Court of Federal Claims has exclusive jurisdiction to render judgment upon any claim against the United States for money damages exceeding $10,000 that is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." As such, a "claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance…." *Horne v.*

*Dep't of Agriculture*, 569 U.S. 513, 527 (2013) (citations omitted).

There is an exception to this rule. Namely, the Court of Federal Claims' jurisdiction cannot be invoked by a plaintiff's inclusion of a frivolous takings claim. *See, e.g., In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*, 138 Fed. Cl. 658, 665 (2018) ("Thus, to the extent the Modens have a nonfrivolous takings claim founded upon the Fifth Amendment, jurisdiction under the Tucker Act is proper."). When a court lacks jurisdiction over an action, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action could have been brought at the time it was filed." 28 U.S.C. 1631. "Transfer is appropriate when three elements are met: (1) the transferring court lacks subject matter jurisdiction; (2) the case could have been filed in the court receiving the transfer; and (3) the transfer is in the interests of justice." *Kinney v. United States*, 161 Fed. Cl. 644, 649 (2022) (quoting *Brown v. United States*, 74 Fed. Cl. 546, 550 (2006)). Additionally, while the transferor court may decline transfer as futile, that decision "rests within the sound discretion of the transferor court." *Id.* (quoting *Spencer v. United States*, 98 Fed. Cl. 349, 359 (2011)). In this case, the Court of Federal Claims explicitly stated that "transfer is in the interest of justice as at least one of [Plaintiff James Quarterman's] claims appears to be nonfrivolous." [Doc. 7, p. 2].

While the Court of Federal Claims did not specify which claim it specifically found to be potentially nonfrivolous, it does appear that the Court of Federal Claims

found that Plaintiffs' Fifth Amendment takings claim to be frivolous. *See, e.g.,* [Doc. 5, p. 1 ("It is readily apparent that the Court lacks subject matter jurisdiction over any of these claims, which all stem from Mr. Quarterman's allegations of racial discrimination.")]; [*id.* (citing *Rohland v. United States*, 136 Fed. Cl. 55, 68 (2018) ("To prevail on a takings claim under the Tucker Act, a plaintiff must concede the legitimacy of the government action that effected the taking."))]. Here, Plaintiffs clearly do not concede the validity of the Government's action. *See* [Doc. 30-1, p. 6]. Therefore, the Court of Federal Claims "cannot exercise jurisdiction over a takings claim premised on unauthorized action." *Figueroa v. United States*, 57 Fed. Cl. 488, 496 (2003); *see also Short v. United States*, 50 F.3d 994, 1000 (Fed. Cir. 1995) ("The government action upon which the takings claim is premised must be authorized, either expressly or by necessary implication, by some valid enactment of Congress."); *Riviera Drilling & Expl. Co. v. United States*, 61 Fed. Cl. 395, 402 (2004) ("A well-pleaded takings claim must allege that an authorized government action has interfered with a property owner's enjoyment of property."). Accordingly, as the Court of Federal Claims appropriately concluded, it lacks jurisdiction over Plaintiffs' frivolous Fifth Amendment takings claims and properly transferred the case to this court. Because the Court finds that it does have jurisdiction to hear Plaintiffs' alleged takings claim, it **DENIES** the Government's motion as to a lack of subject-matter jurisdiction.

As such, the Court now turns to the questions of whether Plaintiffs' takings claim

survives under Rule 12(b)(6). As explained below, Plaintiffs' pleadings are nonetheless insufficient to support such a claim under Rule 12(b)(6).

To overcome a motion to dismiss, Plaintiffs must plead facts that plausibly suggest that they had "a property interest for purposes of the Fifth Amendment" and that the "governmental action at issue amounted to a compensable taking of that property interest." *Am. Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004) (citation omitted). In this case, no Defendant guaranteed Plaintiffs access to or approval of a USDA farm loan and Plaintiffs have no cognizable property interest in a mere loan application. Additionally, the USDA's determination to deny any such application does not constitute a taking.

To the extent that Plaintiffs base their takings claim on their alleged contract with Spice World, that too fails to establish that Plaintiffs had an enforceable property right sufficient to support a takings claim. It is not clear from Plaintiffs' Amended Complaint that they actually entered into a binding contract with Spice World. Plaintiffs failed to attach a copy of the contract to their Amended Complaint (or incorporate one by reference from their original complaint), nor did they necessarily plead facts sufficient to support the existence of a *binding* contract or obligation with Spice World. However, a brief review of the alleged contract attached as an exhibit to the Amended Complaint the Court approved (but Plaintiffs did not file) reveals that it is not a "contract" at all, but rather a nonbinding "letter of intent" by its own terms – drafted by none other than

Mr. Quarterman himself. *See* [Doc. 12-12, p. 2 ("… this LOI [Letter of Intent] is not intended as a legally binding commitment by [Spice World] …)]. Instead, it appears that Plaintiffs' base their supposed takings claim on hypothetical unearned profits from a potential future contract. That is simply not enough to support a takings claim.

Even if some contract actually existed between Plaintiffs and Spice World, the United States is not a party to any such contract. As the Court of Federal Claims has explained, there is no taking "unless the government steps into the shoes of one of the contracting parties[] and thus assumes the contractual rights and obligations of one of those parties." *Century Exp. New Orleans, Inc. v. United States*, 103 Fed. Cl. 70, 76 (2012) (citing *Brooks-Scanlon Corp. v. United States*, 265 U.S. 106 (1924)). In this case, the Amended Complaint does not allege that any Defendant had any knowledge of or involvement in the alleged contract between Plaintiffs and Spice World, much less that any Defendant stepped into the proverbial shoes of either party. Accordingly, Defendants have not and could not have committed a taking.

Finally, Plaintiffs have not identified a single regulatory action that would conceivably support their argument that Defendants effected a "regulatory taking of their property interest in the Spice World contract." [Doc. 30-1, p. 6]. There are two kinds of Fifth Amendment takings: physical takings and regulatory takings. *Alford co-Trustee of Lionel d. Alford Jr., and Tammy Nix Alford Revocable Trust v. Walton Cnty.*, 159 F.4th 844, 854 (11th Cir. 2025). A plaintiff can pursue a "regulatory taking" when the

government "imposes regulations that restrict an owner's ability to use his own property." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 148 (2021) (emphasis added). Such restrictions or regulations "on the use of private property can qualify as a regulatory taking if the restriction—in the Supreme Court's words—goes too far." *Alford*, 159 F.4th at 855 (internal quotations and citations omitted).

Here, Plaintiffs have identified no regulation, restriction, or other constraint that Defendants have placed on either Plaintiffs' farmland or their alleged contract with Spice World, let alone one that "goes so far" as to constitute a taking. *See, e.g., Cedar Point*, 594 U.S. at 149–52 (finding that a California regulation permitting union organizers to enter the plaintiff's property for up to 3 hours per day, 120 days per year was a taking requiring just compensation). Instead, Plaintiffs' allegations are centered around a USDA farm loan application, a totally separate transaction, that bears no relation to the Spice World contract. Taking Plaintiffs' Amended Complaint as true, as this Court must, it fails to sufficiently allege that Defendants restricted Plaintiffs' ability to use their property. Therefore, the Court dismisses Plaintiffs' takings claim Rule 12(b)(6).

### D.    The Equal Credit Opportunity Act & Regulation B

Finally, Defendants assert that Plaintiffs' ECOA claim fails to state a claim upon which relief may be granted because it consists entirely of conclusory allegations of discrimination by officials from the USDA. The ECOA makes it "unlawful for any

creditor to discriminate against any applicant, with respect to any aspect of a credit

transaction . . .  on the basis of race." 15 U.S.C. § 1691(a). To state a claim under ECOA,

Plaintiffs must allege that (a) they are members of a protected class, (b) they applied for

and were qualified for an extension of credit, (c) despite their qualifications they were

rejected, and (d) others outside their protected class of similar credit stature were

treated more favorably. *Nicholson v. Johanns*, No. CIV. A. 06-0635WSB, 2007 WL 3407045,

at *6 (S.D. Ala. Nov. 13, 2007) (internal quotations and citations omitted) (explaining

that courts typically analyze ECOA claims under the same analytical framework as Title

VII employment claims).

Here, Plaintiffs fail to allege sufficient non-conclusory facts to state a

plausible claim for relief. Plaintiffs allege that "officials from the USDA and CCC

intentionally discriminated against them based on race"; that "the loan application was

denied by former FSA Farm Loan Manager Megan Stanley, who made statements

indicating intentional discrimination based on race"; that "evidence includes emails,

administrative findings, and direct admissions of bias;" "the denial was based on

arbitrary grounds." *See* [Doc. 30 at pp. 2–4].  Additionally, Plaintiffs also allege that

"officials from the USDA and CCC intentionally discriminated against them based on

race"; that "[their] allegations of intentional discrimination, procedural violations, and

resulting harm are sufficient to state a claim"; and that the "USDA officials denied the

loan, with direct evidence of bias and procedural violations". *See also* [Doc. 30-1 at pp.

1–2]. Plaintiffs offer no factual details to support these allegations and instead rely on

what are nothing more than textbook conclusory statements to support their claim.

They offer no additional details of how the USDA farm loan application was tainted by

improper considerations of race, what supposed statements evidence a discriminatory

motive, or why the stated grounds for denial of their application are arbitrary. Plaintiffs

furthermore fail to allege that they were otherwise qualified for the USDA farm loan or

that individuals outside of their protected class, but with similar credit statuses,

received more favorable treatment. *See Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x

872, 874 (11th Cir. 2013) (per curiam) (affirming dismissal of complaint because

"nowhere in [the plaintiff's] complaint does she identify any valid comparators to

undergird her disparate treatment claims"); *Jones v. Featherstone Homeowners Ass'n*, No.

5:20-CV-290-MTT, 2021 WL 5171485, at *3 (M.D. Ga. Nov. 5, 2021) (dismissing

discrimination claim on the same basis). Plaintiff's threadbare allegations once again

fail, and the Court dismisses any claim under the ECOA and Regulation B.

### E.    <u>Order from the Court of Federal Claims</u>

As a final matter, the Court would be remiss in not addressing Plaintiffs'

continued and stubborn insistence that the Court of Federal Claims found their claims

"meritorious." Mr. Quarterman has relentlessly asserted that the Court of Federal

Claims found their claims to be meritorious and non-frivolous in more than one filing,

despite having absolutely no evidence to support that claim. *See* [Doc. 20]; [Doc. 26];

[Doc. 30]; [Doc. 33]. The Court addressed this exact issue with him at the December 3, 2025, motions hearing, giving Plaintiffs ample opportunity to show where, exactly, the Court of Federal Claims proclaimed their claims to be "meritorious." Unsurprisingly, Plaintiffs failed to locate any such language.

Even so, Plaintiffs, namely Mr. Quarterman, persisted. In their Amended Complaint, Plaintiffs claim that in its September 29, 2025, transfer order, the Court of Federal Claims found that Plaintiffs' claims were "non-frivolous and meritorious." [Doc. 30, p. 5]. Specifically, Plaintiffs allege that the Court of Federal Claims "held that the factual and legal allegations presented by Plaintiffs were sufficient to defeat a motion to dismiss under normal court discretion. This ruling confirms the substantive merit of Plaintiffs' claims and eliminates any founds for dismissal at this stage." [*Id.*]. Similarly, in their supporting memorandum, Plaintiffs state that the Court of Federal Claims held "that their factual and legal allegations were sufficient to defeat a motion to dismiss" and that its "ruling supports the substantive validity of the plaintiffs' claims at this stage of the litigation." [Doc. 30-1, p. 2].

As the Court explained to Mr. Quarterman in detail, these statements are patently false. In fact, the Court of Federal Claims actually "[took] no position on the merits of [Plaintiffs'] claim[s] . . . other than to observe that [Mr. Quarterman's] claims are not obviously time-barred or so facially frivolous that transfer would be futile." [Doc. 7, p. 2]. This sort of boilerplate transfer language did not determine Plaintiffs'

Complaint to be so meritorious that they skip right past the Government's motion. Plaintiffs would have this Court believe that the Court of Federal Claims' routine transfer order acted as some sort of legal Monopoly card, directing them to go to discovery, go directly to discovery, do not worry with well-pleaded allegations and do not worry about *Iqbal* and *Twombly*. The Court expressly warned Plaintiffs about their repeated misrepresentations to the Court at the hearing on December 3, 2025. Based on Plaintiffs' conduct following that hearing, it appears that Plaintiffs did not absorb that message. Accordingly, the Court would be well within its rights to dismiss Plaintiffs' Amended Complaint as a sanction for deliberately trying to mislead this Court, especially after it explicitly warned them about the potential consequences. *Vargas v. Peltz*, 901 F. Supp. 1572, 1581–82 (S.D. Fla. 1995) (dismissing plaintiff's sexual harassment suit when it was revealed plaintiff had fabricated evidence and lied at deposition); *Peerless Indus. Paint Coatings Co. v. Canam Steel Corp.*, 979 F.2d 685, 687 (8th Cir. 1992) (per curiam) ("Fraud on the court is grounds for dismissal with prejudice."); *Chemtall, Inc. v. Citi-Chem, Inc.*, 992 F. Supp. 1390, 1410 (S.D. Ga. 1998) (finding defendant had engaged in abusive conduct, including lying under oath, and a lesser sanction than dismissal would not suffice). Nonetheless, the Court declines to do so. The insufficiency of their Amended Complaint warrants dismissal. The Court once again warns Plaintiffs that it would be wise to curb any impulse to persistently mislead this Court or the Eleventh Circuit in their inevitable appeal.

19

## <u>CONCLUSION</u>

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss [Doc. 32]. Accordingly, because Plaintiffs have failed to sufficiently advance any claim upon which relief can be granted, the Court **DISMISSES** Plaintiffs' claims with prejudice. FRCP 12(b)(6). The Court directs the Clerk of Court to enter judgment closing this case.

**SO ORDERED**, this 15th day of January, 2026.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**